H. Clay Keene
Alaska Bar No: 7610110
KEENE & CURRALL, P.C.
540 Water Street, Suite 302
Ketchikan, Alaska 99901
Phone: (907) 225-4131
Fax: (907) 225-0540
E-mail: courtdocs@keenecurrall.com
Attorneys for the plaintiff

FILED in the Trial Courts
State of Alaska First District
at Ketchikan
JAN 18 2017
Clerk of the Trial Courts
By_____Deputy

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT KETCHIKAN

| | |
|---|---|
| KETCHIKAN MECHANICAL, INC., an Alaska corporation. <br><br> Plaintiff, <br><br> SPRINKLER TECHNOLOGY DESIGN, INC., a Montana corporation; COFFMAN ENGINEER, INC., a Washington corporation; and DAVID HUGHES JR., <br><br> Defendants | Case No. 1KE-17-25 CI |

## COMPLAINT

Ketchikan Mechanical, Inc., an Alaska corporation, brings this complaint against the defendants, Sprinkler Technology Design, Inc., Coffman Engineer, Inc., and David Hughes, Jr., and alleges as follows:

**I.  Introduction.**

Ketchikan Mechanical, Inc., (herein, "KMI") seeks costs and damages caused by Sprinkler Technology Design, Inc., (herein, "STD"), and its owner, David Hughes, Jr's., (herein, "Hughes") from the misinformation and design errors given to and relied on by KMI in bidding the fire sprinkler system for the Ketchikan Medical Center Addition, Phase 1 Project (herein,

COMPLAINT – Page 1 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc., Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

THIS MATTER IS FORMALLY ASSIGNED TO TREVOR N. STEPHENS SUPERIOR COURT JUDGE

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 1 of 14

"Project").

STD and Hughes failed to accurately calculate the number of fire sprinkler heads required for the Project. STD and Hughes represented that a total of 598 fire sprinklers were needed for the Project. KMI relied on this information, in submitting a bid for the fire sprinkler system to Layton-Dawson Joint Venture Constructors (herein, "Layton"), the general contractor for the Project. After Layton accepted KMI's bid for 598 fire sprinkler heads, it was determined by STD and Hughes that the Project required 902 sprinkler heads. KMI purchased and installed and installed at its own expense, an additional 321 sprinkler heads not included in its bid to Layton. As a result, KMI incurred damages in the amount of $402,190.50, the exact amount to be proven at trial.

Hughes admits the miscalculation of 598 sprinkler heads for the Project is the fault and responsibility of STD and Hughes.

In April 2015, STD merged with defendant, Coffman Engineering, Inc (herein, "Coffman"). As a consequence of the merger, Coffman assumed responsibility for the obligations and liabilities of STD, including but not limited to, the KMI Claims brought herein.

KMI seeks an award of all costs and damages it incurred from STD and Hughes miscalculation of the fire sprinkler heads required for the Project, plus incidental, special, consequential, treble damages, and all attorney's fees, interest, and litigation costs incurred by KMI to prosecute its claims.

## II. Parties.

1. KMI is a bonded and licensed general contractor with the state of Alaska,

COMPLAINT – Page 2 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 2 of 14

specializing in plumbing, heating, and mechanical construction; and at all times relevant to the KMI Claims, was in good standing and qualified as an Alaska domestic corporation to bring this civil action, having paid the biennial corporate tax and filed the biennial report last due.

2.  Defendant STD was at most times relevant to this complaint, a Montana corporation, engaged in fire protection engineering, that contracted with KMI to design a fire sprinkler system for the Ketchikan Medical Center Addition – Phase I Project. On or about April 2, 2015, STD merged with Coffman Engineer, Inc., from which Coffman Engineer, Inc., became the survivor, successor company.

3.  Defendant Coffman Engineer, Inc., (herein, "Coffman"), is an engineering firm, that provides civil, structural, mechanical, and electrical engineering services to clients in Alaska, Hawaii, California, Montana, Washington, and Guam. In April 2015, Coffman merged with STD and assumed the assets and liabilities of STD as a consequence of the merger, including the liabilities KMI claims.

4.  Defendant David Hughes (herein "Hughes"), was at most times relevant to this complaint, an owner and managing engineer of STD, and was personally responsible for calculating the correct number of fire sprinkler heads required for the Project.

### III. Jurisdiction and Venue.

5.  Jurisdiction and venue are proper in this Court pursuant to A.S. 22.10.020 and Alaska Rule of Civil Procedure 3, as the engineering contract entered into between KMI and STD pertained to the design of a fire sprinkler system for the Ketchikan Medical Center Addition – Phase I, which is located in the City of Ketchikan, Alaska, being within the First Judicial

COMPLAINT – Page 3 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes*, Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 3 of 14

District.

## IV. Factual Allegations.

6. The Ketchikan Medical Center (herein, "Hospital"), is located in Ketchikan, Alaska, and is owned by the City of Ketchikan (herein, "City"). The Hospital is operated and maintained pursuant to a lease between the City and PeaceHealth, a non-profit, faith-based entity, organized under the laws of the State of Washington.

7. In September, 2014, the City of Ketchikan entered into Contract No. 13-38A with Layton for Phase I of the Ketchikan Medical Center Expansion Project of the Ketchikan Medical Center Addition and Alteration (herein, "Project"), for the amount of $45,207,269.

8. In March 2014 KMI received an invitation to bid the plumbing, mechanical and fire sprinkler system work of the Project.

9. In March, 2014, KMI received Bid Packets 1 and 2 for the Project.

10. In March, 2014, after receiving the invitation to bid, KMI contacted Hughes and STD to retain them to design the fire sprinkler system for the Project.

11. On or about March 27, 2014, Hughes provided a fee proposal to KMI for Hughes and STD to design and engineer the fire sprinkler system for the Project.

12. On or about March 27, 2014, Hughes and STD told KMI owner, Mike Jurczak, that 598 fire sprinkler heads would be required for the Project. The calculation of 598 fire sprinkler heads was determined by STD and Hughes from Bid Packets Nos. 1 and 2, which were available online. It was later acknowledged by Hughes, that the information in Bid Packets Nos. 1 and 2, was sufficient to accurately calculate the number of fire sprinkler heads required for the

COMPLAINT – Page 4 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,
Coffman Engineer, Inc., Hughes*, Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 4 of 14

Project.

13. Hughes and STD had an ongoing relationship with KMI, having previously engineered and designed numerous fire sprinkler systems for KMI. That relationship included providing KMI with the number of fire sprinkler heads that were required on a project, with which KMI would formulate a bid for a project. The course of dealing between Hughes and KMI on the Project leading up to STD and Hughes calculation of the number of fire sprinkler heads required for the Project, was no different than what had occurred with past projects and bids.

14. After being told by Hughes and STD the Project required 598 fire sprinkler heads and before submitting KMI's bid to Layton, KMI owner, Mike Jurczak, contacted STD engineer Eric Carlson, and requested that he confirm that the Project required a total of 598 fire sprinkler heads.

15. Prior to April 2, 2014, STD engineer, Eric Carlson, who was directly supervised by Hughes, confirmed to Mike Jurczak that the Project required a total of 598 fire sprinkler heads.

16. On or about April 2, 2014, KMI submitted a bid to Layton for the fire sprinkler system for the Project in the amount of $237,500.00. This bid was formulated by KMI on the basis of 598 fire sprinkler heads as provided by STD and Hughes. Hughes and STD knew that KMI would rely on Hughes and STD calculation of the total number of fire sprinkler heads determined for the Project in formulating KMI's bid for the Project.

17. On or about June 27, 2014, Layton released Bid Packet No. 4 which was the completed shop drawings and specifications for the Project.

COMPLAINT – Page 5 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

18. On or about August 12, 2014 KMI signed Ketchikan Medical Center Subcontract (herein, "KMI Subcontract"), for the fabrication and installation of the fire sprinkler system for the Project for the contract price of $239,170.00.

19. On or about August 26, 2014, KMI signed STD's proposal for professional services that included the calculation of the number of fire sprinkler heads required for the Project and the preparation of shop drawings for the fire sprinkler system for the Project. The proposal was a revision to STD's initial proposal received by KMI on March 27, 2014, as Layton required that the shop drawings be "BIM Coordination." This addition to the proposal increased the costs of the STD engineering services from $25,000.00 to $28,200.00.

20. On or about November 17, 2014, Layton signed the KMI Subcontract, for the installation of the fire sprinkler system in the amount of $239,170.00.

21. On or about January 27, 2015, STD completed and provided KMI with the preliminary shop drawings and design of the fire sprinkler system for the Project.

22. The preliminary shop drawings for the Project prepared by STD and Hughes show a total of 902 fire sprinkler heads would be required for the Project, not 598 as earlier represented.

23. On or about March 24, 2015, KMI began on-site work under the KMI Subcontract with Layton for installation of the fire sprinkler heads on the Project.

24. On or about September 25, 2015, final shop drawings were completed by Coffman and received by KMI, which show a total of 902 fire sprinkler heads required for the Project. KMI ultimately determined that 919 fire sprinkler heads were required for the Project. It was later determined that defendants failed to include 16 fire sprinkler heads required for the

**COMPLAINT** – Page 6 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 6 of 14

"mailroom" and missed one required on the second floor of the Project.

25. On or about February 17, 2016, KMI management met with representatives of Layton and City of Ketchikan to discuss KMI's bid from the number of fire sprinkler heads actually required for the Project.

26. KMI asked Layton allow KMI to modify its bid to include the additional 321 sprinkler heads not calculated by Hughes and STD.

27. Layton was aware at the time the bid was submitted to Layton in April 2014, that the KMI bid was grossly less than the next highest bid from Chinook Fire Protection. Chinook Fire Protection bid $625,000, which was based on the installation of 1003 fire sprinkler heads.

28. Despite the apparent disparity between the KMI and the Chinook Fire Protection bids, Layton did not inform KMI of this disparity prior to accepting the KMI bid in November 2014.

29. The correct number of fire sprinkler heads required for the Project is 919, not including an additional 21 sprinkler heads installed by KMI under change orders.

30. KMI's bid for the fire sprinkler system for the Project was predicated on STD's representation that the Project required 598 fire sprinkler system heads. Had STD provided an accurate calculation of the number of fire sprinkler heads required for the Project, KMI would have submitted a bid based on 919 fire sprinkler heads in the amount of $574,375.00. This projected bid amount is based on a cost to purchase and install each sprinkler head of $625 ($625 x 919 = $574,375.)

31. KMI paid for the purchase and installation of the additional 321 fire sprinkler

COMPLAINT – Page 7 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. IKE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 7 of 14

heads that STD failed to include in calculating the total number of fire sprinkler heads that would be required for the Project.

32. STD also failed to properly design the fire suppression system for the parking area of the Project for a dry system, which was necessary because the parking garage area is exposed to weather conditions.

33. On or about February 17, 2016, KMI management met with representatives of the City and STD, including Hughes and Luke Qualm, to discuss the KMI bid. The purpose of that meeting was to seek Layton's agreement to cover KMI's out-of-pocket losses relating to the additional sprinkler heads not covered by KMI's bid.

34. On or about February 19, 2016, KMI representatives again met with representatives of the City and STD to discuss KMI's bid.

35. At the meetings on February 17 and 19, Hughes admitted that he and STD miscalculated the number of fire sprinkler heads required for the Project; and, that he and STD were responsible for the miscalculation and resulting loss to KMI.

36. Hughes said at the February 17 and 19 meetings, that the miscalculation was due to a typographical ("typo") error.

37. On or about February 20, 2016, a KMI representative met with Layton to question why Layton had not informed KMI that its bid was substantially less than the next lowest bidder, Chinook.

38. Following the February 20, 2016, meeting, Layton refused to pay KMI for the loss KMI incurred from STD and Hughes miscalculation of the number of fire sprinkler heads

**COMPLAINT** – Page 8 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

required for the Project.

39. As a result, KMI incurred damages of $402,190.50, which include KMI's out-of-pocket costs to purchase and install the additional 321 fire sprinkler heads, and consequential and incidental damages, the exact amount of which will be proven at trial.

## V. First Cause of Action Against Hughes and STD: Breach of Contract.

40. KMI incorporates by reference paragraphs 1-39, herein.

41. The fire sprinkler design contract required STD to design the system pursuant to National Fire Protection Association 13 (herein, "NFPA 13"), consistent with professional engineering design standards, and the Ketchikan Medical Center Addition – Phase I plans and specifications that were acknowledged by STD and Hughes in March 2014 to be sufficient to provide the accurate number of fire sprinkler heads for the Project that KMI required for its bid that was submitted to Layton.

42. STD and Hughes breached its professional service contract with KMI by failing to accurately calculate the number of fire sprinkler heads required for the Project that was given to KMI and relied on by KMI in formulating its bid for the fire sprinkler system for the Project; and by failing to correctly design the piping required for the parking garage of the Project.

43. STD and Hughes actions or inactions were a breach of its contract with KMI, causing KMI to submit a subcontract bid for fabrication and installation of the fire sprinkler system for the Project that had substantially less fire sprinkler heads than required for the Project, and by failing to adequately design the fire sprinkler system in the parking garage, all of which caused KMI to incur the cost to purchase and install and additional 321 fire sprinkler heads and

**COMPLAINT** – Page 9 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 9 of 14

piping for the parking garage, and incur costs and expenses in the amount of $402,190.50, the exact amount of which will be proven at trial.

44. KMI fully complied with its contract with STD and performed all terms, conditions, and covenants KMI was required to perform under the professional service contract.

## VI. Second Cause of Action Against STD and Hughes: Breach of Expressed Warranty.

45. KMI incorporates by reference paragraphs 1-44 herein.

46. In accordance with STD's contract to provide professional engineering design services to KMI for the Project, STD warranted that the number of fire sprinkler heads calculated by Hughes and STD in March 2014 would be correct, and that the shop drawings to be provided for the fabrication and installation of the fire sprinkler system for the Project would be done consistent with NFPA 13.

47. STD and Hughes breached the express warranty of its professional service contract with KMI.

48. STD and Hughes actions or inactions in breach of its express warranties caused KMI to pay out-of-pocket for the cost to fabricate and install an additional 321 fire sprinkler heads that STD and Hughes failed to include in the calculations given to KMI in March 2014, and breached their warranty that the shop drawings would be in accordance with NFPA 13, as the design of the fire sprinkler system in the parking garage was contrary to NFPA 13. As a result, KMI incurred costs and expenses in the amount of $402,190.50, the exact amount of which will be proven at trial.

## VII. Third Cause of Action Against STD and Hughes: Negligent Design.

**COMPLAINT** – Page 10 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 10 of 14

49. KMI incorporates by reference paragraphs 1-48, herein.

50. STD and Hughes owed a duty to KMI to exercise reasonable skill and care in the design of the fire sprinkler system for the Project, the calculation of the number of fire sprinkler heads required for the Project, and the fire sprinkler system pipe required for the parking garage.

51. STD and Hughes breached the duty of care to KMI by failing to comply with the design standards of NFPA 13, applicable building codes and industry standards in providing KMI with the number of fire sprinkler heads required for the Project, and the shop plans for the Project.

52. Hughes and STD were negligent in calculating the number of fire sprinkler heads required for the Project and the design of the parking garage sprinkler system.

53. As a result of STD and Hughes negligence, and KMI has incurred damages in the amount of $402,190.50, the exact amount of which will be proven at trial.

### VIII. Fourth Cause of Action Against STD and Hughes: Negligent Misrepresentation.

54. KMI incorporates by reference paragraphs 1-53, herein.

55. STD and Hughes negligently misrepresented to KMI the number of fire sprinkler heads required by the Project, and that it would design the fire sprinkler system for the parking garage consistent with NFPA 13, applicable building codes and industry standards.

56. STD and Hughes induced KMI to accept and rely on STD and Hughes calculations of the number of fire sprinkler heads required for the Project, and the shop drawings and other services proposed under the terms of its contract with KMI.

57. STD and Hughes knew or should have known, that KMI would rely on STD and Hughes to provide accurate calculations of the number of fire sprinkler heads required for the

**COMPLAINT** – Page 11 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 11 of 14

Project, and that its shop drawings would be consistent with NFPA 13 and industry standards.

58. As a result of STD and Hughes misrepresentation and KMI's reliance, KMI suffered damages in the amount of in the amount of $402,190.50, the exact amount of which will be proven at trial.

### IX. Fifth Cause of Action Against STD and Hughes: Breach of Covenant of Good Faith and Fair Dealing.

59. KMI incorporates by reference paragraphs 1-58, herein.

60. STD and Hughes breached the implied covenant of good faith and fair dealing by failing to take care in the calculations of the number of fire sprinkler heads required for the Project, and to assure the design of the fire sprinkler system for the Project was done in a competent manner, and in compliance with the NFPA 13 standards, together with applicable building codes and industry standards.

61. As a result of STD and Hughes breach of the covenant of good faith and fair dealing, KMI incurred damages in the amount of $402,190.50, the exact amount of which will be proven at trial.

### X. Sixth Cause of Action Against STD and Hughes: Breach of Implied Warranties.

62. KMI incorporates by reference paragraphs 1-61, herein.

63. STD and Hughes impliedly warranted that they were qualified, skilled and able to design the fire sprinkler system for the Project in a good, professional and workmanlike manner in accordance with NFPA 13, applicable building codes, and industry standards.

64. STD and Hughes breached the implied warranties by failing to give KMI the correct number of fire sprinkler heads that were required for the Project and failing to design the

**COMPLAINT** – Page 12 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 12 of 14

fire sprinkler system and prepare the shop drawings consistent with the NFPA 13 standards, applicable building codes, and industry standards.

65. As a result of STD and Hughes breach of the implied warranties, KMI has been damaged in the amount of $402,190.50, the exact amount of which will be proven at trial.

## XI. Seventh Cause of Action Against STD and Hughes: Deceptive Trade Practices.

66. KMI incorporates by reference paragraphs 1-65, herein.

67. STD and Hughes misrepresentation in March 2014 of the number of fire sprinkler heads required for the Project, and failure to provide a design and shop drawings for the fire sprinkler system within the parking garage of the Project violated A.S. 45.50.471(b)(6), (11) and (12) of the Alaska Unfair Trade Practices and Consumer Protection Act.

68. As a result of Hughes and STD violation of the Act, KMI is entitled to an award of actual attorney fees, pursuant to A.S.45.50.537(a) and treble damages pursuant to A.S. 45.50.531.

## XII. First Cause of Action Against Coffman: Successor in Interest Liability.

69. KMI incorporates by reference paragraphs 1-68, herein.

70. April 2015, STD merged with Coffman, with Coffman becoming the survivor, successor corporation.

71. As of April 2015, STD was no longer in existence as a corporate entity, having merged its corporate entity with Coffman.

72. As a result of the corporate merger of STD and Coffman, the debts and liabilities of STD were assumed by and became the debts and liabilities of Coffman as a matter of law.

**COMPLAINT** – Page 13 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc.,*
*Coffman Engineer, Inc., Hughes,* Case No. 1KE-17-_____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 13 of 14

73. Coffman is liable to KMI to the same extent STD is liable to KMI.

WHEREFORE, KMI is entitled to judgment against the defendants for:

    A. General, special, incidental, consequential, in the amount of $402,190.50, the exact amount of which will be proven at trial;

    B. treble damages pursuant to AS 45.50.531(a);

    C. Attorney's fees and costs as allowable by law, which may include "full" reasonable attorney fees under the Unfair Trade Practices and Consumer Protection Act per AS.45.50.537(a); and,

    D. Such other and further relief as the Court deem just and proper.

Dated at Ketchikan, Alaska this 18th day of January 2017.

KEENE & CURRALL, P.C.
A Professional Corporation
Attorneys for Ketchikan Mechanical, Inc.

By _____
H. Clay Keene, Alaska Bar No: 7610110

COMPLAINT – Page 14 of 14
*Ketchikan Mechanical v. Sprinkler Technology Design, Inc., Coffman Engineer, Inc., Hughes*, Case No. 1KE-17-____ CI
Hck\S:\Ketchikan Mechanical (20.219.A) Sprinkler Technology\Pleadings\Complaint.doc

Case 5:17-cv-00002-JWS   Document 4-1   Filed 02/22/17   Page 14 of 14